IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| LUDMILA KHALID and SYED KHALID,<br><br>                 Plaintiffs,<br><br>        vs.<br><br>BANK OF AMERICA, N.A.; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITITES 1-10; and DOE GOVERNMENTAL UNITS 1-10,<br><br>                 Defendants. | CIVIL NO. 15-00182 DKW-KSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

On April 13, 2015, *pro se* Plaintiffs Ludmila and Syed Khalid filed this

action against Defendant Bank of America, N.A. ("BANA"), asserting various

federal and state law claims arising from an unsuccessful refinancing of a

mortgage relating to certain real property on the island of Maui, on which BANA

foreclosed in 2010.  Before the Court is BANA's Motion to Dismiss.  Dkt. No. 8.

Because the Khalids fail to state a claim upon which relief can be granted, the

Court GRANTS BANA's Motion.  The Khalids are permitted leave to amend their ADA and negligence claims as set forth in this Order.

## **BACKGROUND**

On October 2, 2006, the Khalids executed a promissory note for a $588,000.00 home loan secured by a mortgage on real property located in Kihei, Hawai'i ("Property").  Complaint ¶¶ 4-5; Exhibit ("Exh.") A.  The Mortgage, which was recorded on October 25, 2006, identifies the Khalids as the borrowers, Countrywide Bank, N.A. as the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the lender and lender's successors and assigns.  Declaration ("Decl.") of Patricia McHenry ¶ 3; Exh. A at 2.  On October 21, 2009, MERS assigned the beneficial interest in the loan to BAC Home Loans Servicing, LP.  McHenry Decl. ¶4; Exh. B.  BANA is the successor-by-merger to BAC Home Loans Servicing, LP.[1]  Dkt. No. 8-1 at 8 n.1.

By the beginning of 2009, the Khalids fell into "financial hardship" and experienced difficulties paying their mortgage.  Complaint ¶¶ 6-7.  As a result, they sought "loss mitigation assistance" from BANA.  Complaint ¶ 9.  The Khalids allege that a BANA representative advised them that it "would only help them if they fell behind in mortgage payments."  Complaint ¶ 10.  Thereafter, the Khalids intentionally defaulted on the loan based on this information.  Complaint ¶ 11.

---

[1]Because BANA is the successor-by-merger to BAC Home Loans Servicing, LP, the Court hereinafter refers to "BAC Home Loans Servicing, LP" as "BANA."

In 2010, the Khalids unsuccessfully sought a loan modification from BANA after their default.  Complaint ¶¶ 12-13.  The Khalids told BANA that they needed to "avoid the stress of leaving the [Property]" because they had "medical complications" related to a blockage in Mr. Khalid's heart and open heart surgery for Mrs. Khalid.  Complaint ¶¶ 14-15.  As part of the loan modification review, BANA allegedly requested  "proof of medical disability" from the Khalids.  Complaint ¶ 16.  The Khalids allege that BANA requested medical records, but it is unclear whether medical records were ever provided.  Complaint ¶¶ 16-17.

On December 17, 2009, BANA recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale on the Property.  McHenry Decl. ¶ 5; Exh. C.  The nonjudicial foreclosure of the Property occurred on May 12, 2010, at which time BANA purchased the Property.  McHenry Decl. ¶ 6; Exh. D.

On April 13, 2015, approximately five years after the completed nonjudicial foreclosure, the Khalids filed a Complaint in the Circuit Court of the Second Circuit, State of Hawai'i, wherein they alleged that: (1) BANA's conduct violated the Unfair and Deceptive Trade Practices ("UDAP") Act; (2) BANA's conduct violated the Americans with Disabilities Act ("ADA"); and (3) BANA's "demand for medical records and abuse of that information constituted a violation of [the Health Insurance Portability and Accountability Act ("HIPAA")]."  Complaint ¶¶ 29-31.  In addition, the Khalids allege that "[a]s a direct and proximate result of

3

[BANA's] failure to explore loss mitigation alternatives with [the Khalids], [the Khalids] suffered extreme emotional distress."  Complaint ¶ 25.  The Khalids requested monetary damages as a result of the alleged violations.

On May 18, 2015, BANA removed the state court action to this Court.  Dkt. No. 1.  On May 26, 2015, BANA filed its Motion to Dismiss.  Dkt. No. 8.  The Khalids did not initially file an opposition to BANA's motion.  However, following a July 10, 2015 hearing on the Motion, in which the Khalids participated by phone, and given the Khalids' *pro se* status, the Court granted the Khalids a further extension of time to file an opposition brief.  On July 20, 2015, the Khalids sent two emails to this Court, comprising their opposition, both of which contain the same content.  Dkt. Nos. 19-20.  BANA replied on July 25, 2015.  Dkt. No. 21.

## STANDARD OF REVIEW

The Court liberally construes the Khalids' filings because they are proceeding pro se.  *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).  "Pro se litigants must [nonetheless] follow the same rules of procedure that govern other litigants."  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).

4

On a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Marcus v. Holder*, 574 F.3d 1182, 1184 (9th Cir. 2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 556).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984)).

**DISCUSSION**

## I.   <u>UDAP Claim</u>

The Khalids allege that BANA violated UDAP through the "servicing and foreclosing" of the Mortgage. Complaint ¶¶ 28-29. In response, BANA points out that the Khalids' UDAP claim is time-barred as a matter of law. The Court agrees.

Claims under UDAP are subject to a four-year statute of limitations. Specifically, Hawaii Revised Statutes (HRS) § 480-24 provides that, "[a]ny action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues . . . ." HRS § 480-24(a). "This four-year period begins to run from the date of the occurrence of the violation, and not the date of the discovery." *Kersh v. Manulife Fin. Corp.*, 792 F. Supp. 2d 1111, 1122 (D. Haw. 2011).

Here, the Khalids' UDAP claim is based on the servicing and foreclosure of the Mortgage in 2009 and 2010. Any claim that may have arisen from BANA's conduct in the servicing and foreclosure of the Mortgage expired four years after the foreclosure sale, which took place on May 12, 2010. At the latest, the Khalids were required to bring their UDAP claim by May 12, 2014. However, the Khalids did not file their Complaint until April 13, 2015, nearly a year too late.

Equitable tolling may be appropriate where there has been fraudulent concealment. *See Rundgren v. Bank of N.Y. Mellon*, 777 F. Supp. 2d 1224, 1231 (D. Haw. 2011). The Khalids, however, have not pled any facts which would establish fraudulent concealment of any of BANA's alleged conduct in violation of UDAP, nor have they provided any argument as to how their UDAP claim may be timely through equitable tolling or otherwise. Because the Khalids failed to bring their UDAP claim within four years of the foreclosure sale, and the factual

6

allegations of the Complaint do not provide a basis for excusing the Khalids' late

filing, the Khalids' UDAP claim is time barred.  Because amendment would be

futile, the Court dismisses the Khalids' UDAP claim with prejudice.

## II.    ADA Claim

The Khalids allege that BANA's conduct violated the ADA.  The Khalids,

however, do not recite the elements of an ADA cause of action nor do they allege

the facts necessary to support one.

To bring a claim under Title III of the ADA, the Khalids must show that:

> [They are] disabled as that term is defined by the ADA: (2)
> [BANA] is a private entity that owns, leases, or operates a place
> of public accommodation; (3) [BANA] employed a
> discriminatory policy or practice; and (4) [BANA]
> discriminated against the plaintiff based upon the [Khalids']
> disability by (a) failing to make a requested reasonable
> modification that was (b) necessary to accommodate the
> [Khalids'] disability.

*Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004).

In the instant case, the Complaint is devoid of any of these elements.  As a

threshold matter, the Khalids do not sufficiently plead any facts indicating that they

are "disabled" as defined by the ADA.  The Khalids merely state that they had

"medical problems"; that "Mr. Khalid had medical complications relating to a

blockage in his heart; and that "Ms. Khalid was scheduled for open heart surgery."

Complaint ¶¶ 14-15.  Although these allegations indicate that the Khalids were

suffering from medical issues, they do not necessarily fall within the ADA's

definition of "disabled." Even assuming the Khalids are "disabled" within the meaning of the ADA, they have failed to plead that BANA operates, and the Property at issue qualifies as, a place of "public accommodation." *See* 42 U.S.C. § 12181(7) (defining places of "public accommodation"). Moreover, the Khalids do not assert BANA's conduct was related to their medical disabilities in any way, let alone that BANA discriminated against them.

Despite BANA raising these deficiencies in its Motion to Dismiss and at the hearing on the motion, the Khalids failed to address these deficiencies at the hearing or in their subsequently filed opposition. Nevertheless, the Court recognizes that the Khalids are proceeding *pro se* and that the deficiencies could arguably be cured by amendment. Accordingly, the Court dismisses the Khalids' ADA claim with leave to amend.

## III. <u>HIPAA Claim</u>

The Khalids claim that BANA's "demand for medical records and abuse of that information constituted a violation of HIPAA." Complaint ¶ 31. Similar to the deficiencies plaguing the Khalids' ADA claim, the Khalids' HIPAA claim fails to identify the elements of a HIPAA cause of action or allege facts that support one. BANA further points out that the Khalids "do not allege how HIPAA grants them a private right of action, or how BANA allegedly violated the law." Dkt. No. 8-1 at 20.

Based on these deficiencies, the Court concludes that the Khalids fail to state a claim to relief that is plausible on its face, and thus, dismissal is proper. *Iqbal*, 556 U.S. at 678. The Khalids have made no attempt to address these deficiencies or explain how they could be cured by amendment. The Court is unaware of any authority that supports a private cause of action under the circumstances of this particular case. Moreover, other courts have found that HIPAA does not create a federal private cause of action. *See Wheeler v. Hilo Medical Center, Inc.*, Civ. No. 09-00533 JMS/KSC, 2010 WL 1711993, at * 7 (D. Haw. Apr. 27, 2010) ("HIPAA does not give rise to a private cause of action."); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (holding that there is no private cause of action under HIPAA). Accordingly, the Court dismisses the Khalids' HIPAA claim with prejudice.

## IV.    <u>Negligence Claim</u>

The Khalids allege that BANA failed to explore loss mitigation alternatives, and as a result, they suffered "extreme emotional distress" as a "direct and proximate result" of BANA's purported failure. Complaint ¶ 25. It is unclear whether these allegations sound in negligence. However, in an abundance of caution, BANA contends that to the extent that a claim for negligence is alleged, such an allegation fails because the Khalids cannot plead that BANA owed them any duty to modify their loan. Dkt. No. 8-1 at 21-22.

9

To prevail on a negligence claim, a plaintiff must demonstrate:

> (1) A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;
>
> (2) A failure on the defendant's part to conform to the standard required: a breach of the duty;
>
> (3) A reasonably close causal connection between the conduct and the resulting injury; and
>
> (4) Actual loss or damage resulting to the interests of another.

*Takayama v. Kaiser Found. Hosp.*, 82 Hawai'i 486, 498-99, 923 P.2d 903, 915-16 (1996).

As such, the existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence. As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction is limited to its conventional role as a mere lender of money. *See McCarty v. GCP Management, LLC*, Civil No. 10-00133 JMS/KSC, 2010 WL 4812763, at *5 (D. Haw. 2010). Other courts have found that lenders owe no duty to modify a borrower's loan or conduct a modification review where "the application for loan modification had not progressed to a concrete stage" and "where there [was] no indication that such an application would have been granted." *Ottolini v. Bank of Am.*, No. C-11-0477 EMC, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19, 2011). Absent special circumstances, a loan transaction "is at

arms-length" and no duties arise from the loan transaction outside those in the agreement.  Liability to a borrower for negligence arises when a lender/servicer "actively participates" in the financed enterprise beyond the domain of the usual money lender.  *See Spencer v. DHI Mort. Co., Ltd.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009).

Here, the Complaint is devoid of any facts indicating that BANA went beyond its conventional role as a loan servicer that would give rise to a duty of care.  Even assuming the existence of a duty, the Khalids also fail to plead any facts that demonstrate the element of causation, *i.e.*, how the alleged breach of such duty caused them any damage.

The Court concludes that the Complaint fails to state a claim for negligence. It is, however, arguably possible for the Khalids to cure the defects in their claim by amendment.  As such, the negligence claim is dismissed with leave to amend.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS BANA's Motion to Dismiss.  Dkt. No. 8.  The Khalids are granted until **October 23, 2015** to file an

amended complaint in accordance with this Order.  Failure to do so will result in the closure of this case without further notice.

IT IS SO ORDERED.

DATED:  September 30, 2015 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
United States District Judge

Khalid v. Bank of America, N.A., et al.; CV 15-00182 DKW-KSC; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS